UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| GUY EDWIN HOKANSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 3:08-CV-252 CAN |
| | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY sued as Michael J. Astrue | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

On June 14, 2008, Plaintiff, Guy Edwin Hokanson ("Hokanson"), filed his complaint in this Court. On October 13, 2008, Hokanson filed an opening brief, in which he asks this Court to enter judgment in his favor or to remand this matter to the Commissioner. On December 23, 2008, Defendant, Commissioner of Social Security ("Commissioner"), filed its response brief. On December 26, 2008, Hokanson filed his reply brief. This Court now enters its ruling based upon the record of this case that includes the pleadings, the motions, the administrative record, briefs of the parties, and the arguments of counsel.

**I.     PROCEDURE**

On August 26, 2004, Hokanson filed his application for Disability Insurance Benefits ("DIB"). (Tr. 28, 71). Hokanson claims he is entitled to benefits pursuant to Title II of the Social Security Act. See 42 U.S.C. §§ 416(i), 423(d). Hokanson's application was initially denied and again upon reconsideration. (Tr. 43-49, 50-53). On June 22, 2007, Hokanson appeared at a hearing before an Administrative Law Judge ("ALJ"). (Tr. 28, 36). The ALJ found that Hokanson has severe physical impairments. (Tr. 30). The ALJ found that Hokanson has the

residual functional capacity ("RFC") to perform light work. (Tr. 32). Therefore, the ALJ found that Hokanson was not disabled. (Tr. 35).

Hokanson appealed the ALJ's decision to the Appeals Council. (Tr. 11). On April 10, 2008, the Appeals Council denied Hokanson's request for review, and as a result, the ALJ's decision became the Commissioner's final decision. (Tr. 5). See 20 C.F.R. § 404.981; Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). Consequently, Hokanson filed a complaint in this Court seeking a review of the ALJ's decision. This Court may enter a ruling in this matter based on the parties' consent, 28 U.S.C. § 636(c), and 42 U.S.C. § 405(g).

## II. ANALYSIS

### A. Facts

At the time of the ALJ's decision, Hokanson was fifty-three years old and had received a high school GED diploma. (Tr. 71, 93). He has prior relevant work experience as a assistant manager, carpet cleaner, food preparer, department manager and stocker at a grocery store, and factory assembly-line worker. (Tr. 74).

Hokanson alleges that he has been disabled since May 15, 2000 because of his physical impairments, which include: degenerative joint disease of all major joints, lumbar osteoarthritis and fibromyalgia. (Tr. 193, 197-99, 242, 270). In addition to his physical impairments, Hokanson has been diagnosed with depression. (Tr. 210, 214-15). The ALJ found Hokanson's depression to be non-severe, and Hokanson did not raise an issue regarding his depression in his brief.

Hokanson testified, that he can stand for about fifteen to thirty minutes before his pain is aggravated. (Tr. 287-88). In addition, Hokanson stated that he can sit for a while, but the pain

causes him to squirm a lot. (Tr. 288). Hokanson indicated that he can lift about ten pounds with his left arm but only about two pounds with his right arm. (Tr. 289, 295). Hokanson reported that he has constant, throbbing pain. (Tr. 294). Hokanson has taken Zoloft, Oxycontin and Methadone in the past for his pain. (Tr. 296). Additionally, Hokanson does some light daily activities, including: watching television, washing dishes, preparing meals and searching the internet. (Tr. 111, 289-90). Hokanson stated that he does not take a shower or bath unless his wife is home because he sometimes gets dizzy, feels light-headed and is scared of falling. (Tr. 290). Hokanson has seen numerous physicians for both medical treatment and pain management.

1. Dr. Jennifer Ludwig ("Dr. Ludwig")

Dr. Ludwig was Hokanson's primary care physician from 2001 to 2004. Dr. Ludwig stated that Hokanson has chronic pain secondary to "fibromyalgia and/or degenerative joint disease." (Tr. 197). Dr. Ludwig administered Hokanson an injection to his left shoulder based on complaints of pain, but she indicated that another doctor managed Hokanson's pain. (Tr. 197, 204).

2. Dr. David A. Beatty ("Dr. Beatty")

In November 2002, Dr. Beatty, a pain management specialist, noted that Hokanson's shoulder rotation was "half of normal" both externally and internally. (Tr. 168). Dr. Beatty also reported that Hokanson could not raise his arms past twenty degrees and that he had difficulty raising his arms above his head. (Tr. 168). Additionally, Dr. Beatty reported that Hokanson was "a little tender pretty much globally" including tenderness in his neck, shoulders and trapezius area. (Tr. 168). Dr. Beatty indicated that Hokanson had fibromyalgia and prescribed methadone

3

and pool therapy. (Tr. 168). In January 2003, Dr. Beatty saw Hokanson for his shoulder and referred Hokanson to Dr. Bankoff to discuss surgery. (Tr. 191). In March 2004, Dr. Beatty saw Hokanson for knee and hip pain but noted no change in Hokanson's physical examination. (Tr. 164). The March 2004, x-rays indicated loose bodies in the left knee, and mild degenerative changes in both knees and hips. (Tr. 160). In May 2004, Hokanson visited Dr. Beatty complaining of pain and stated that the Methadone was not reducing his pain. (Tr. 156-59). Dr. Beatty diagnosed Hokanson with spondylosis lumbar and referred him to Dr. Bankoff to follow-up on the loose bodies in his knee. (Tr. 159).

3. Dr. David Bankoff ("Dr. Bankoff")

In June 2004, Dr. Bankoff, an orthopaedic specialist, examined Hokanson's knees and hips. (Tr. 183). Dr. Bankoff did not indicate that surgery was necessary but referred Hokanson to Dr. Todd A. Graham for pain management. (Id.). The X-rays indicated "minimal arthritic changes in both hip joints." (Id.). In September 2005, however, Dr. Bankoff noted chronic arthritic changes in Hokanson's knees and hips. (Tr. 265). Later, in March 2003, Dr. Bankoff operated on Hokanson's left shoulder. (Tr. 151-55). In May 2003, following the first shoulder surgery, Dr. Bankoff noted that Hokanson's shoulder was doing better. (Tr. 186). Hokanson participated in outpatient therapy and independent exercise and was noted as making good progress. (Id.). In September 2005, Dr. Bankoff operated on Hokanson's right shoulder. (Tr. 268-71).

4. Dr. Todd A. Graham ("Dr. Graham")

On July 14, 2004, Dr. Graham, a pain consultant, examined Hokanson for pain in his knees and back. (Tr. 193). Hokanson complained of pain in almost all movement, including

4

back pain, hip and groin pain, and knee pain. (Tr. 193). Dr. Graham recommended additional pain medicine, Neurontin or an increase in Elavil, but such treatment was not pursued because Hokanson indicated that it was not successful in the past. (Tr. 194). In addition, Dr. Graham ordered a CT scan of the lumbar spine, which indicated a disc herniation on the right side at L4-L5. (Tr. 195-96).

5. Dr. Sices

In October 2004, Dr. Sices, a state agency physician, examined Hokanson, noting joint limitations in the range of motion in Hokanson's shoulders, lumbar spine and hips . (Tr. 198-200). Dr. Sices reported that Hokanson was limited in raising his shoulder sideways to eighty-five degrees and in raising his shoulder forward eighty degrees. (Tr. 200). Additionally, Dr. Sices stated that Hokanson could carry light objects in each hand but did not opine regarding the effect of prolonged activity. (Tr. 199). Further, Dr. Sices reviewed the CT scan and noted evidence of degenerative lumbar disorder. (Id.). He stated that epidural injections or other procedure would relieve pain and increase function. (Id.).

6. State Agency Physicians

In December 2004, Dr. Whitley, state agency physician, reviewed Hokanson's record for the agency. (Tr. 216-23). Dr. Whitley opined that Hokanson could lift twenty pounds occasionally and ten pounds frequently. (Tr. 217). Dr. Whitley also noted that Hokanson was able to sit, stand or walk, with normal breaks for a total of six hours in an eight hour workday. (Id.). Dr. Rousch, a state agency reviewing physician, affirmed the findings of Dr. Whitley. (Tr. 223).

The issues this Court must resolve are whether the ALJ's determinations to not award Hokanson's treating physicians controlling weight was supported by substantial evidence, whether the ALJ failed to properly assess Hokanson's credibility, and whether the ALJ's evaluation of Hokanson's past relevant was supported by substantial evidence.

B. Standard of Review

The standard of review for an ALJ's decision is whether it is supported by substantial evidence and free of legal error. See 42 U.S.C § 405(g); Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhardt, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence means such relevant evidence as a reasonable mind might accept to support such a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1972). A reviewing court is not to substitute its own opinion for that of the ALJ's or to re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626. An ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003). However, an ALJ's legal conclusions are reviewed *de novo*. Haynes, 416 F.3d at 626.

C. Hokanson's Motion for Summary Judgment or Remand

To be entitled to benefits under 42 U.S.C. §§ 423, 1321a, Hokanson must establish that he was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled.  The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's RFC leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920; Briscoe, 425 F.3d at 352.  If the ALJ finds that the claimant is disabled or not disabled at any step, he may make his determination without evaluating the remaining steps.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If there is an affirmative answer at either step three or step five, then there is a finding of disability.  Briscoe, 425 F.3d at 352.  At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner.  See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app. 1, subpt. P, § 404.  However, if the impairment is not so listed, the ALJ assesses the claimant's RFC, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society under step five.  20 C.F.R. § 404.1520(e).  The claimant bears the burden of proof on steps one through four, but the burden shifts to the Commissioner at step five.  Id.

      The ALJ determined that Hokanson was able to lift and carry twenty pounds occasionally and ten pounds frequently.  (Tr. 32).  Additionally, the ALJ found Hokanson was able to climb ladders, ropes, or scaffolds, crouch and crawl, frequently climb ramps and stairs, balance, stoop and kneel.  (Tr. 32).  Further, the ALJ determined that Hokanson could stand or walk, with

7

normal breaks, for about six hours a day. (Tr. 32). Accordingly, the ALJ found that Hokanson's residual functional capacity allowed him to perform light work that existed in significant numbers in the national economy. (Tr. 32, 35). Thus, the ALJ concluded that Hokanson was capable of performing past relevant work as a security guard, production assembler or assistant manager. (Tr. 35).

    1.    The ALJ's decision to give the opinions of Hokanson's examining physicians less weight was not supported by substantial evidence.

Hokanson contends that the ALJ erred by assigning more evidentiary weight to the opinions of the state agency reviewing physicians than to those of his treating physicians. An ALJ is to give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. Hofslien v. Barnhart, 439 F.3d 375, 376 (7th Cir. 2006). "This rule . . . seems to take back with one hand what it gives with the other, and as a result to provide little in the way of guidance to either." Id. More weight is generally given to the opinion of a treating physician because she is more familiar with the claimant's conditions and circumstances. 20 C.F.R. § 416.927(d)(2); Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000). However, a claimant is not entitled to benefits merely because a treating physician labels her as disabled. Dixon v. Massanari, 270 F.3d 1171, 1177 (7th Cir. 2001).

Unfortunately, there is no bright line for when a physician's opinion is inconsistent with other substantial evidence in the record, and it is essentially a case-by-case determination depending on the circumstances. Id. Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence in the record. Clifford, 227 F.3d at 870. However, the ALJ must avoid substituting his own opinion for that of the treating physician

8

without relying on medical evidence or authority in the record. 20 C.F.R. § 416.927(d)(2); Clifford, 227 F.3d at 870; Rohan v. Chater, 98 F.3d 966, 968 (7th Cir. 1996). When evidence in opposition to the presumption is introduced, the rule drops out and the treating physician's evidence is just one more piece of evidence for the ALJ to weigh. Hofslien, 439 F.3d.at 377. However, when evaluating the conflicting opinions of an examining and a non-examining physician, contradictory evidence by the non-examining physician, by itself, is not enough evidence to discount the examining physician's opinion. Gudgel v. Barnhart, 345 F.3d 467, 470 (7th Cir. 2003).

In support of Hokanson's argument, Hokanson notes that the ALJ did not address Dr. Sices' June 2004 CT scan evaluation and did not reference or discuss Dr. Graham's examination report. Further, this Court notes that the ALJ did not discuss the opinions of Dr. Ludwig, Dr. Beatty, Dr. Bankoff, and Dr. Graham. Instead, the ALJ chose to adopt the opinions of the state agency reviewing physicians, and, in support, stated only that those opinions were consistent with the other medical evidence. See Tr. 34. In contrast, the only discussion given by the ALJ in regards to Hokanson's treating physicians' opinions was that "[they] have [not] indicated any other limitations in the claimant's ability to function physically." See Tr. 34. As such, Hokanson argues that the ALJ improperly considered the opinions of his treating physicians, rendering the ALJ's RFC finding unsupported by substantial evidence.

In response, the Commissioner argues that the ALJ's decision to give the treating physician's opinion less weight was proper. In support, the Commissioner argues that the ALJ was not required to address every piece of evidence in his decision. Sims, 309 F.3d at 429. This Court finds this argument to be unpersuasive in this instance. While the ALJ does not have to

9

address every piece of evidence, the ALJ must provide some explanation as to why he discounted the treating physicians' opinions in favor of the state agency physicians. See Gudgel, 345 F.3d at 470; 20 C.F.R. 404.1527(f)(2)(ii) (2008). Furthermore, an ALJ must evaluate every medical opinion received. 20 C.F.R. 404.1527(b)(2008). See also Jenkins v. Astrue, 544 F.Supp.2d 736 (N.D. Ind. 2008) (holding that the ALJ "erred in failing to mention and analyze [a medical expert's] opinion").

In this instance, the ALJ failed to even minimally discuss the weight given to Hokanson's treating physicians' opinions or the reasons for deciding to give them less weight. Instead, the ALJ made only one conclusory statement that the state agency physician's opinion was not inconsistent. In contrast, the ALJ should have first discussed the findings of Hokanson's treating physicians and explained his reasons for affording each opinion less weight. As such, this Court finds that the ALJ's opinion to give more weight to the state agency physicians was not supported by substantial evidence. Because the ALJ made no attempt to discuss any of the opinions, remand is necessary for the ALJ to consider and discuss all the medical evidence. In particular, the ALJ must explain the weight given to the opinions of Hokanson's treating physicians and explain the reasons for affording these opinions such weight.

    2.    <u>The ALJ's determination regarding Bradley's credibility was not supported by substantial evidence</u>.

In addition, Hokanson contends that the ALJ's determination regarding Hokanson's credibility was not supported by substantial evidence. Specifically, Hokanson argues that the ALJ inappropriately addressed his pain symptoms and that the ALJ misunderstood the nature of fibromyalgia. Additionally, Hokanson claims the ALJ failed to reference all of the objective medical evidence.

Because an ALJ is in a special position where he can hear, see, and assess witnesses, his credibility determinations are given special deference, and as a result, his credibility determinations will only be overturned if they are patently wrong. Jens v. Barnhart, 347 F.3d 209, 213 (7th Cir. 2003); Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported . . . can the finding be reversed."). However, an ALJ cannot simply state that an individual's allegations are not credible. Golembiewski, 322 F.3d at 915. In addition, the ALJ may not simply recite the factors that are described in the regulations for evaluating symptoms. Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001). Instead, Social Security Ruling 96-7p requires an ALJ to articulate specific reasons for his credibility finding. Golembiewski, 322 F.3d at 915; Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002). However, an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence." Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004) (quoting Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995)).

The ALJ found Hokanson's testimony regarding his symptoms to be not fully credible because the ALJ determined Hokanson's pain complaints to be exaggerated and "out of proportion" with the objective medical evidence. See Tr. 33. The ALJ based his opinion on numerous pieces of evidence. For instance, the ALJ noted that there was only mild degenerative changes in Hokanson's knees and hips, that surgery has not been recommended, and that MRIs of the lumbar region showed only minimal limitations. Id. Additionally, the ALJ noted a report of one consulting physician, who opined that Hokanson seemed to exaggerate his pain complaints, and that none of the treating physicians had placed any "specific limitations" on

Hokanson's ability to function. See Tr. 34. Further, the ALJ noted that Hokanson had a full range of daily activities, such as performing light household chores, watching television, reading, and using the computer. See Tr. 33-34. Based upon this evidence, the ALJ found Hokanson's pain complaints to be not credible. Id.

Despite the ALJ's thorough consideration of this evidence, however, Hokanson argues that the ALJ misuderstood the nature of fibromyalgia and the pain associated with it. In particular, Hokanson notes that fibromyalgia symptoms are "entirely subjective" and explains that laboratory tests may not establish the severity of the Hokanson's pain. See Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir. 1996). As such Hokanson argues that, under Sarchet, the ALJ must give additional consideration to Hokanson's complaints of pain, due to this diagnosis of fibromyalgia.

Upon closer examination of Sarchet, however, this Court concludes that Sarchet does not alter the standard test for determining credibility. Instead, Sarchet only emphasizes the ALJ's duty to build a "logical bridge" between the evidence and his conclusion. Sarchet, 78 F.3d at 307. This Court concludes that the ALJ satisfied his duty in this case. In particular, the ALJ supported his credibility determination, primarily, on the basis of inconsistencies in the objective medical evidence and inconsistencies between Hokanson's pain complaints and his daily activities. The law is clear that an ALJ may base his credibility determination on such factors. Sarchet, 78 F.3d at 307. Indeed, in the typical case, all the ALJ must do is consider the objective medical evidence and build a logical and accurate bridge between the evidence and result. Id. As such, on its face, the ALJ's credibility determination appears to be substantially supported.

However, despite the ALJ's thorough discussion of some of the evidence, because this Court has already determined that the ALJ neglected his duty to discuss the medical opinions of Hokanson's treating physicians, this Court cannot conclude that the ALJ's credibility determination is substantially supported. As such, while the ALJ stated that Hokanson's allegations were not proportionate to the objective medical evidence, the ALJ failed to make it clear what objective medical evidence he relied upon in reaching this conclusion. On remand, the ALJ must consider the opinions of Hokanson's treating physicians and re-evaluate his credibility determination in consideration of that evidence.

3. <u>The ALJ's assessment of Hokanson's past relevant work was improper.</u>

Finally, Hokanson alleges that the ALJ's evaluation of Hokanson's past relevant work was improper. In particular, Hokanson argues that at step four, the ALJ must determine whether the claimant has the RFC that permits him to perform his past work. 20 C.F.R. § 404.1520(e).

In determining whether the claimant can perform his past relevant work, the ALJ must compare the physical demands of the type of work previously performed with the claimant's present capabilities. <u>Strittmatter v. Schweiker</u>, 729 F.2d 507, 509 (7th Cir. 1984). At step five, if the claimant cannot perform his past relevant work, then the ALJ must determine if he can perform other work in society. 20 C.F.R. § 404.1520(g). Hokanson argues that the ALJ failed to specify his prior job duties prior to his evaluation of Hokanson's present ability to perform the same tasks. See <u>Nolen v. Sullivan</u>, 939 F.2d 516, 519 (7th Cir. 1991). As such, Hokanson contends that the ALJ posed an improper hypothetical to the vocational expert.

This Court has already determined that the ALJ must, upon remand, re-evaluate Hokanson's credibility and RFC, after first considering what weight to afford the opinions of

13

Hokanson's treating physicians'. Based upon this reconsideration of Hokanson's RFC, it is therefore, necessary that the ALJ also re-evaluate Hokanson's ability to perform his past relevant work on remand. Further, the ALJ is advised to be more clear in his articulation of this analysis, as the ALJ's immediate opinion did not clearly delineate which jobs Hokanson could still perform.

### III. CONCLUSION

The ALJ's decision to afford the non-examining State agency physicians more weight than Hokanson's treating physicians was not supported by substantial evidence because the ALJ failed to explain why he afforded the opinions of Hokanson's treating physicians less weight. In addition, because the ALJ failed to discuss the opinions of Hokanson's treating physicians, the ALJ's analysis of Hokanson's credibility was similarly not supported by substantial evidence. Further, the ALJ's determination at step four was also not supported by substantial evidence because the ALJ posed an improper hypothetical to the vocation expert. As a result, this Court **GRANTS** Hokanson's motion. [Doc. No. 12]. Accordingly, this case is **REVERSED** and **REMANDED** to the Commissioner for proceedings consistent with this opinion pursuant to sentence four (4) of 42 U.S.C. § 405(g).

**SO ORDERED.**

Dated this 23rd Day of April, 2009.

 S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge